

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| JOHNNIE WELLS and ANNFYEON WELLS, | § § § | |
| Plaintiffs, | § § | |
| vs. | § § | Civil Action No. 4:19-cv-1099-MGL |
| KEN CUCCINELLI, Acting Director, U.S. Citizenship and Immigration Services, Defendant. | § § § § § | |

**MEMORANDUM OPINION AND ORDER DENYING
PLAINTIFFS' MOTION FOR RELIEF PURSUANT TO 5 U.S.C. § 705
AND DENYING PLAINTIFFS' MOTIONS TO COMPLETE THE RECORD**

**I.     INTRODUCTION**

Plaintiffs Johnnie Wells (Johnnie) and Annfyeon Wells (Annfyeon) (collectively Plaintiffs) filed this action seeking judicial review of a decision denying Plaintiffs' Form I-130, Petition for Alien Relative, and Form 1-485, Application to Register Permanent Residence or Adjust Status, (collectively Plaintiffs' petitions) by Defendant Ken Cuccinelli, Acting Director of United States Citizenship and Immigration Services (the agency), pursuant to 5 U.S.C. § 704. Pending before the Court is Plaintiffs' second motion for relief pursuant to 5 U.S.C. § 705 (§ 705), in which the Plaintiffs ask this Court to delay the legal effect of the agency's denials of Plaintiffs' petitions pending judicial review. Also pending before the Court are Plaintiffs' motion to compel completion of the certified administrative record (CAR) and second motion to compel the agency

1

to complete the record or in the alternative to allow limited discovery. The Court has jurisdiction over this matter under 28 U.S.C. § 1331.

Having carefully reviewed Plaintiffs' motions, the agency's responses, Plaintiffs' replies, the applicable law, the certified administrative record (CAR or the record), the supplement filed by the agency, and the parties' arguments at the hearing on May 15, 2019, the Court is of the opinion Plaintiffs' motions should be denied.

## II.     FACTUAL AND PROCEDURAL HISTORY

### A. *Factual History*

In March 2006, Plaintiff Annfyeon Wells (Annfyeon), a resident of Jamaica, lawfully entered the United States. Amended Complaint ¶ 11. She later met and married her first husband, S.T., in 2009. *Id*. ¶ 12-13. S.T. is a citizen of the United States. *Id*. ¶ 14. On October 10, 2010, S.T. filed a Form I-130, Petition for Alien Relative, on behalf of Annfyeon seeking to classify her as a spouse of a United States citizen. *Id*.

After beginning their investigation, the agency began to suspect S.T. and Annfyeon's marriage was a "sham" entered into for the purpose of obtaining a green card. CAR, ECF No. 25-3, at 44. On March 13, 2019, Officer M.B. conducted separate interviews with Annfyeon and S.T. *Id*. at 45-55. He noted in a memorandum to the Fraud and Detection and National Security Office (FDNS) Officer L.Z. "there are a few discrepancies, some major and some minor." *Id*. at 44.

Officer L.Z. stated in a memorandum to the agency's file "the interviewing officer [M.B.] identified multiple marriage fraud indicators at the initial interview [of S.T. and Annfyeon] …" *Id*. The memorandum also stated Officer L.Z. had contacted Special Agent D.G. with Immigrations and Customs Enforcement (ICE)/ Homeland Security Investigations (HSI) after Officer M.B. conducted separate follow-up interviews with Annfyeon and S.T. *Id*. Officer L.Z. formally

requested ICE/HSI conduct an interview with S.T. to "substantiate a finding of fraud on [S.T.'s] pending adjustment of status case." *Id*. at 10-11. Special Agent D.G. accepted the case. *Id*.

On August 15, 2013, ICE/HSI Special Agents D.G. and J.W. visited S.T. at his home and interviewed him regarding his marriage to Annfyeon. CAR, ECF No. 25-2 at 121. According to the Special Agents, S.T. confessed to entering into a "sham" marriage with Annfyeon for the sole purpose of helping Annfyeon obtain her green card. *Id*. This is substantiated by the Withdrawal of Petition/Application he signed the same day, requesting to withdraw his Petition for Alien Relative he filed on behalf of Annfyeon. *Id*. at 23.

In the withdrawal, S.T. wrote, "I only married Ann [Annfyeon] to help her stay in the United States. We never lived together as man and wife. When we went to immigration we lie[d] about livin[g] together[.] I'm so sorry for l[y]ing this marr[i]age is not real." *Id.* Annfyeon and S.T. officially divorced on January 27, 2017. Amended Complaint ¶ 25.

Annfyeon and Johnnie started dating in 2014 and began living together in September 2014. CAR, ECF No. 25-7 at 1. They were married on August 22, 2017. Amended Complaint ¶ 26. Johnnie later filed a new Petition for Alien Relative, on behalf of Annfyeon in February 2018, seeking to classify Annfyeon as her spouse. *Id*. ¶ 27. As part of this application, S.T. wrote a letter in support under oath, stating his marriage to Annfyeon was legitimate and bona fide. *Id*. ¶ 28. On February 20, 2018, Annfyeon also filed a new Application to Register Permanent Residence or Adjust Status. CAR, ECF No. 25-4 at 27.

On March 26, 2019, Officer M.B. issued Plaintiffs' a Notice of Intent to Deny (NOID) letter on the Petition for Alien Relative. Amended Complaint ¶ 32. The NOID stated the denial was based on Annfyeon and S.T.'s prior marriage being a "sham," entered into solely for the purpose of evading immigration laws. *Id*. ¶ 33.

Plaintiffs' response to the NOID was due on April 29, 2019. *Id*. ¶ 37. On April 11, 2019, Plaintiffs requested an opportunity to inspect the agency's record of proceedings pursuant to 8 C.F.R. § 103.2(b)(16) (setting forth the procedure for when a petitioner may inspect the record of proceeding which constitutes the basis for the decision). *Id*. ¶ 40. The agency denied Plaintiffs' request to inspect the record prior to submitting their response to the NOID. *Id*. ¶ 42. On April 25, 2019, Plaintiffs responded to the NOID and the agency received it on April 26, 2019. *Id*. ¶¶ 43-44.

Plaintiffs' response to the NOID included two declarations intended to rebut the agency's allegations of marriage fraud. *Id*. ¶ 45. The first declaration was a statement from S.T. explaining "he was intoxicated during the August 2013 interrogation" and "the immigration officers knew he was intoxicated but interrogated him anyway." *Id*. ¶ 46. S.T.'s declaration also stated any statement he wrote on the day of the interview was dictated to him by the officers. *Id*. The second declaration was a statement from Annfyeon "recounting her experience with S.T. the day after officers interrogated S.T." *Id*. ¶ 47.

On May 3, 2019, the agency denied Plaintiffs' Petition for Alien Relative and Application to Register Permanent Residence or Adjust Status. Id. ¶ 48. The agency stated it denied Plaintiffs' Petition for Alien Relative for abandonment, however, the denial also said the agency received the two declarations submitted in response to the NOID on April 26, 2019. *Id*. ¶ 49. The denial concluded "no competent objective evidence has been provided to overcome the NOID." ECF No. 17-2 at 2.

### B. Procedural History

This is the second motion for relief under §705 Plaintiffs have filed in this lawsuit. This

4

Court denied Plaintiffs' first motion because at that time, the agency had not rendered a final decision on Plaintiffs' applications and this Court did not have jurisdiction to provide the relief Plaintiffs sought. *See* ECF No. 15.

After the agency denied Plaintiffs' petitions, Plaintiffs filed their second motion (Plaintiffs' Motion) for relief pursuant to § 705, seeking an order from this Court delaying "the legal effect of the denials pending judicial review to maintain the status quo." Plaintiffs' Motion at 2. The agency filed a response (Defendant's Response), and Plaintiffs filed a reply (Plaintiffs' Reply). This Court held a hearing on Plaintiff's motion and, with the consent of both parties, subsequently entered a TRO set to expire on June 7, 2019.

The agency lodged the certified administrative record on May 31, 2019. On June 4, 2019, Plaintiffs filed their first motion to compel completion of the certified administrative record (first motion to compel). On June 5, 2019, the Court extended the TRO with the consent of both parties, after the agency volunteered to provide additional documentation requested by Plaintiffs in their first motion to compel.

After the agency filed additional documents it labeled as a "supplement," Plaintiffs filed a second motion to compel the agency to complete the record or in the alternative to allow limited discovery (second motion to compel). This Court ordered the agency to respond to Plaintiffs' second motion to compel and with the consent of both parties extended the TRO to June 24, 2019. After the agency filed its response, Plaintiffs replied.

Although Plaintiffs' Motion is styled as a motion for a TRO, Plaintiffs ask this Court to "delay the legal effect of the denials pending judicial review to maintain the *status quo* [,]" and their motion cites to § 705 and Fed. R. Civ. P. 65. Plaintiffs' Motion at 2. Therefore, this Court construes Plaintiffs' motion as a motion for injunctive relief pursuant to § 705.

## III. STANDARD OF REVIEW

The Administrative Procedure Act (APA) permits courts to "issue all necessary and appropriate process" to preserve a plaintiff's rights pending judicial review: "[O]n such conditions as may be required and to the extent necessary to prevent irreparable injury, the reviewing court…may issue all necessary and appropriate process…to preserve status or rights pending conclusion of the review proceedings." 5 U.S.C. § 705. The parties agree the traditional test for preliminary injunctive relief is the applicable test in deciding Plaintiffs' motion.

"[P]reliminary injunctions are intended to meet exigent circumstances[.]" *Ideal Toy Corp. v. Plawner Toy Mfg. Corp.*, 685 F.2d 78, 84 (3d Cir. 1982). It "is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). A preliminary injunction should issue only when the plaintiffs can "[1] establish that [they are] likely to succeed on the merits, [2] that [they are] likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in [their] favor, and [4] that an injunction is in the public interest." *Id*. at 20.

## IV. DISCUSSION AND ANALYSIS

### A. Plaintiffs' Motion for Relief Pursuant to § 705

The APA governs this Court's review of the agency's final decision. *See* 5 U.S.C. § 704 ("Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review"). Section 705 allows this Court to issue "all necessary and appropriate process" to preserve the parties' rights pending completion of judicial review pursuant to § 704. 5 U.S.C. § 705. In reviewing the agency's decision, this Court must uphold the agency action unless it was "arbitrary, capricious, an abuse of discretion, or

6

otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). In making this determination, the court

> must consider whether the agency decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment. Although this inquiry into the facts is to be searching and careful, the ultimate standard of review is a narrow one. The court is not empowered to substitute its judgment for that of the agency.

*Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971) (internal citations omitted), *overruled on other grounds by Califano v. Sanders*, 430 U.S. 99, 105, 107 (1977). Therefore, for Plaintiffs to satisfy the first prong of *Winter* demonstrating they are likely to succeed on the merits, they must show the agency's final decision denying their petitions was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Id*. (quoting 5 U.S.C. § 706(2)(A)).

A review of agency action under the APA is "highly deferential, with a presumption in favor of finding the agency action valid." *Ohio Valley Envtl. Coal v. Aracoma Coal Co.*, 556 F.3d 177, 192 (4th Cir. 2009). "Even when an agency explains its decision with less than ideal clarity, a reviewing court will not upset the decision on that account if the agency's path may reasonably be discerned." *Alaska Dep't of Env't Conservation v. EPA*, 540 U.S. 461, 497 (2004). Accordingly, an agency decision will be upheld if "the record reveals that a rational basis exists for its decision." *Natural Resources Defense Council, Inc. v. EPA*, 16 F.3d 1395, 1401 (4th Cir. 1993).

Plaintiffs claim they are likely to succeed on the merits of their challenge to the agency's final decision denying Plaintiffs' petitions because (1) the agency's final decision was arbitrary and capricious because the agency stated Plaintiffs abandoned their application, and (2) the agency refused to allow Plaintiffs to inspect the record before responding to the NOID.

### 1. whether the agency's final decision was arbitrary and capricious

Plaintiffs assert the agency denied their Petition for Alien Relative because they "failed to respond to the NOID."[1] Form I-130 Denial at 2. Plaintiffs concede the agency acknowledged it received declarations from S.T. and Annfyeon on April 26, 2019, but they contend the agency "goes on to base the denial exclusively on Plaintiffs' alleged failure to respond to the NOID." Plaintiffs' Motion at 6. The Court agrees the Plaintiffs did not abandon their claim. Nevertheless, the Court does not believe the agency's actions were arbitrary and capricious because it is clear from the agency's decision they considered Plaintiffs' response and found it unconvincing.

On the first page of the agency's decision, it states "You have failed to overcome the grounds outlined in the Notice of Intent to Deny issued by this office on August 28, 2019." Form I-130 Denial at 1. The agency then sets out in the decision what S.T. and Annfyeon wrote in their response to the NOID. *Id*. at 2. Specifically, the decision states:

> [S.T.] also states that he was "black out drunk." However, in his typed, two-page, single spaced letter, [S.T.] speaks to specifics of the interview with the officer's and appears to have a good memory of the event. [S.T.] fails to address the fact that his roommate, an unbiased third party, confirmed his statement that the marriage was a sham.
>
> In [Annfyeon's] letter, [Annfyeon], basically, repeats what [S.T.] wrote even though she was not present when the two officers questioned [S.T.].
>
> The fact that, after speaking with the beneficiary, [S.T.] now attempts to recant his previous statements appears to be self-serving and not convincing due to the fact that if [S.T.] had been intoxicated, as he now claims, the officers would not have attempted to question him at that time. Furthermore, no competent objective evidence has been provided to overcome the NOID.

---

[1] The agency also denied Plaintiffs' Form I-485, Application to Register Permanent Residence or Adjust Status. This denial was based solely upon the fact the agency denied Plaintiffs' Petition for Alien Relative. *See* Form I-485 Denial at 1. Thus, the agency's discussion and substantive analysis of the merits of Plaintiffs' petitions is limited to the Form I-130, Petition for Alien Relative denial.

*Id*.

The Court recognizes the decision later states, "Regardless, due to the fact that you failed to respond to the NOID, [the agency] considers your application abandoned and, therefore, denies it." *Id*. at 3. However, the agency considered and summarized S.T. and Annfyeon's declarations submitted in response to the NOID; they simply found it unpersuasive.

The Court concludes the agency had a rational basis for its denial of Plaintiffs' petitions based upon the S.T.'s statement admitting his marriage to Annfyeon had been entered into for the sole purpose of helping Annfyeon obtain a green card and S.T.'s roommate's statement confirming S.T. and Annfyeon never resided together as they had claimed.

It is noteworthy that Plaintiffs did not even attempt to rebut some of the evidence set forth in the NOID including the agency's statement that S.T.'s roommate verified S.T.'s statement that he and Annfyeon never resided together. It is clear from S.T.'s declaration that S.T. and Annfyeon remain in contact with each other.

If S.T. was intoxicated and bullied by the agents who interviewed him, and his roommate witnessed the interview as the agency describes in the NOID, Plaintiffs could have submitted a statement under oath from S.T.'s roommate supporting S.T.'s version of the events. Instead, Plaintiffs chose to submit only S.T.'s self-serving recantation of his earlier admission, and a statement from Annfyeon, who was not even present at S.T.'s residence when the interview occurred.

While the agency stated they considered Plaintiffs' petitions abandoned, they also analyzed the contents of Plaintiffs' responses to the NOID and determined they were "not convincing." Contrary to Plaintiffs assertion, abandonment was not the agency's "lone rationale" for its denial. There is ample evidence in the agency's final decision to demonstrate the agency had a rational

basis for its decision irrespective of whether Plaintiffs abandoned their application. Therefore, Plaintiffs cannot show a likelihood of success on the merits on this ground.

Plaintiffs must satisfy each of the four elements set forth in *Winter* before injunctive relief will issue. *See Winter*, 555 U.S. at 21-22 (holding all four factors must be met for an injunctive relief to be granted). Because Plaintiffs have failed to show a likelihood of success on the merits, the Court will deny their request for injunctive relief pursuant to § 705.

> **2. whether the agency's refusal to allow Plaintiffs to inspect the record before responding to the NOID was without observance of procedure required by law**

Plaintiffs next contend the Court should declare the agency's decision unlawful because it is "without observance of procedure required by law" and therefore violates 5 U.S.C. § 706(2)(D). Plaintiff's Motion at 7. Plaintiffs assert two complaints about the record: (1) the agency failed to give any explanation for its refusal to allow Plaintiffs to inspect the record and (2) even if the refusal did contain an adequate explanation, it violates 5 U.S.C. § 706(C) "because the Agency has refused to allow the Plaintiffs to inspect the record under [8 C.F.R.] § 103.2(b)(16) before the Agency issued its denial." *Id*. at 7-8. The agency insists providing a summary of the unfavorable evidence in the record satisfies § 103.2(b)(16). Defendant's Response at 6.

Both Plaintiffs' complaints associated with the record rest on the same flawed premise: that they were entitled to inspect the record prior to the agency issuing a final decision. The regulations governing a petitioner's right to inspect evidence related to the adjudication of a Petition for Alien Relative provide as follows:

> (16) Inspection of evidence. An applicant or petitioner shall be permitted to inspect the record of proceeding which constitutes the basis for the decision, except as provided in the following paragraphs.
>
>> (i) Derogatory information unknown to petitioner or applicant. If the decision will be adverse to the applicant or petitioner and is based on derogatory

> information considered by [the agency] and of which the applicant or petitioner is unaware, he/she shall be advised of this fact and offered an opportunity to rebut the information and present information in his/her own behalf before the decision is rendered…
>
> (ii) Determination of statutory eligibility. A determination of statutory eligibility shall be based only on information contained in the record of proceeding which is disclosed to the applicant or petitioner…

8 C.F.R. § 103.2(b)(16).

The plain language of this section states the agency is not always required to provide Plaintiffs with the opportunity to inspect the actual evidence. Subsection (i) requires the agency to "advise[]" the petitioner of derogatory "information" of which Plaintiffs are unaware and upon which the agency intends to rely in reaching an adverse decision. Subsection (ii) provides the agency must "disclose[]" to Plaintiffs any "information" upon which the agency relies in reaching its decision. Instead, in an adjudication of a Petition of Alien Relative, the agency must disclose and advise the petitioner of adverse "information" and "information" upon which it relies, but Plaintiffs are not entitled to production of or access to the evidence or witnesses that constitute the basis of such "information."

Other courts confronted with the same issue have concluded the agency satisfies the requirements of § 103.2(b)(16) by "summarizing" the information upon which the agency relied in denying a petition. *See Sehgal v. Lynch*, 813 F.3d 1025, 1031-32 (7th Cir. 2016); *Ghaly v. INS*, 48 F.3d 1426, 1437 (7th Cir. 1995); *Fliger v. Nielsen*, No. 17-2492 (7th Cir. 2018); *Zizi v. Field Office Dir.*, 753 F. App'x 116, 117 (3d Cir. 2019). At least one other court in the Fourth Circuit has recently reached same conclusion. *See Owusu-Boakye v. Barr*, __ F. Supp. 3d __, 2019 WL 1522876 at * 8 (E.D. Va. April 8, 2019).

In the NOID, the agency properly "advised" Plaintiffs of the derogatory information upon which the agency intended to rely by listing and summarizing that information. This summary

11

was sufficient to enable Plaintiffs to attempt to rebut the information by submitting contrary and exonerating evidence to the agency. As discussed more fully above, Plaintiffs failed to rebut much of the information set forth in the NOID, despite being fully informed of the evidence the agency had considered in determining Plaintiffs' petitions should be denied.

The NOID sent to Annfyeon and Johnnie was replete with information the agency compiled from their investigation into Annfyeon and S.T.'s marriage. The NOID stated Annfyeon and S.T. were "placed under oath, interviewed separately, and asked identical questions about pertaining to their relationship." NOID at 3.

The agency detailed the discrepancies it uncovered in the separate interviews including (1) S.T. stated Annfyeon had a close relationship with her father and Annfyeon said her father lived in Connecticut and she "did not have a relationship with him"; (2) S.T. stated he and Annfyeon did not live together until after they were married and Annfyeon stated they lived together prior to their marriage; and (3) S.T. "could not state [whether] or not [Annfyeon's] mother attended the wedding" and Annfyeon stated "[S.T.'s] friend (who she could not name), her mother, and her stepfather attended the wedding." *Id*. The NOID went on to state S.T. admitted he entered a sham marriage with Annfyeon and provided significant detail about S.T.'s interview with the agents, including the fact that S.T.'s roommate "verified his testimony." *Id*. at 4.

Given the level of detail provided in the NOID, the Court concludes the summary complied with § 103.2(b)(16) and the agency's action was lawful. Therefore, Plaintiffs is unable to show a likelihood of success on the merits on this ground.

As the Court noted above, because Plaintiffs must satisfy each of the four elements set forth in *Winter* before they will be entitled to injunctive relief. *See Winter*, 555 U.S. at 21-22 (holding all four factors must be met for an injunctive relief to be granted). Because Plaintiffs

12

have failed to show a likelihood of success on the merits, the Court will deny their request for injunctive relief pursuant to § 705.

## B. *Plaintiffs' First and Second Motions to Compel*

Plaintiffs have moved this Court to compel the agency to "complete the record" with "the officers' interview notes that form the basis for its formal reports and any other evidence from the interview (videos, recordings, etc.)" or, in the alternative, "allow Plaintiffs to notice depositions of the relevant interviewing officers and allow transcripts thereof to be part of the certified administrative record." Plaintiffs' Second Motion to Compel at 1-2. For the reasons set forth below, this Court will decline to order the agency to produce any additional documents and thus will deny both of Plaintiffs' motions.

In the context of judicial review of agency action under the APA, "the focal point for judicial review should be the administrative record already in existence." *Camp v. Pitts*, 411 U.S. 138, 142 (1973). The Supreme Court and the Fourth Circuit have repeatedly emphasized in APA cases that agencies are entitled to a presumption of regularity, and this presumption "supports the official acts of public officers, and, in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties." *United States v. Chem. Found.*, 272 U.S. 1, 14-15 (1926). Courts in the Fourth Circuit have held this presumption extends to the compilation, designation, and production of the administrative record, as well as certification of that record. *See, e.g., CESC Plaza Ltd. P'ship v. United States Dep't. of Com.*, 215 F.3d 1317 (4th Cir. 2000) (unpublished); *Tafas v. Dudas*, 530 F. Supp. 2d 786, 795 (E.D. Va. 2008).

Only in cases where the agency has provided no explanation for its decision may a reviewing court go beyond "the record the agency presents to the reviewing court." *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743-44 (1985). The record is incomplete only when it is "so

13

bare that it prevents effective judicial review" because it fails to "delineate[] the path by which [the agency] reached its decision." *Menkes v. DHS*, 637 F.3d 319, 339 (D.C. Cir. 2011); *Occidental Petrol. v. SEC.*, 873 F.2d 325, 338 (D.C. Cir. 1989).

The agency has maintained the CAR is complete as originally filed. However, at a hearing before this Court on May 15, 2019, this Court expressed a desire to see the underlying reports relied upon by the agency in issuing the NOID. When the agency produced the CAR, the statement of findings prepared for the agency's adjudication of Plaintiffs' petitions was prepared nearly four years after the agents interview with S.T. on August 15, 2013. After the CAR was lodged, Plaintiffs filed their first motion to compel, seeking the agency's documents created contemporaneously with the interview.

Counsel for the agency then volunteered to reach out to HSI, the agency who conducted the interview with S.T., and attempt to get the contemporaneous reports. To give the agency time to provide these documents to the Court and Plaintiffs, this Court extended the TRO. Although the agency provided these additional materials, they were not submitted, nor did the Court review them, as supplementing the CAR. The agency then filed a supplement, which included reports dated August 26, 2013, within two weeks of the agents' interview with S.T. Plaintiffs then filed their second motion to compel, seeking "the officers' interview notes that form the basis for its formal reports and any other evidence from the interview" along with the agency's memorandum of agreement (MOA) with ICE and the conclusion of HSI's investigation. Plaintiffs Second Motion to Compel at 1.

Plaintiffs have failed to provide any concrete evidence that the CAR provided by the agency in this case is incomplete or frustrates judicial review. The agency submits the CAR is

14

complete as filed, and the CAR is replete with information confirming the agency had a rational basis for denying Plaintiffs' petitions.

The supplement filed by the agency confirms this; it has even more detail of the agents' interview with S.T., S.T.'s roommate, and one of Annfyeon's friends, M.G. Every document produced by the agency in the CAR and the supplement lead to one inescapable conclusion – Annfyeon and S.T. married for the sole purpose of circumventing the immigration laws of the United States.

This Court declines to burden the agency with any additional obligation to produce more documents because it is clear the CAR, as produced, is sufficiently complete to allow judicial review. Therefore, this Court will deny Plaintiffs' first and second motions to compel.

## V.     CONCLUSION

In light of the foregoing discussion and analysis, Plaintiffs' motion for injunctive relief pursuant to § 705 is **DENIED**. Furthermore, Plaintiffs' motion to complete the record and second motion to compel the agency to complete the record or in the alternative to allow limited discovery are also **DENIED**.

IT IS SO ORDERED.

Signed this 24th day of June, 2019, in Columbia, South Carolina.

                                                    ___s/ Mary Geiger Lewis_____
                                                    MARY GEIGER LEWIS
                                                    UNITED STATES DISTRICT JUDGE