

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION**

| | |
|---|---|
| JOHNNIE WELLS and ANNFYEON WELLS, §<br>Plaintiffs, §<br>§<br>vs. §<br>§<br>TRACY RENAUD, *Acting Director, U.S.* §<br>*Citizenship and Immigration Services*, §<br>Defendant. § | Civil Action No.: 4:19-01099-MGL |

**MEMORANDUM OPINION AND ORDER
DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

### I.     INTRODUCTION

Plaintiffs Johnnie Wells (Johnnie) and Annfyeon Wells (Annfyeon) (collectively, Plaintiffs) filed this action seeking judicial review of a decision denying Johnnie's Form I-130, Petition for Alien Relative (I-130 Petition II), by Defendant L. Frank Cissna (Cissna), Director of United States Citizenship and Immigration Services (the Agency), pursuant to 5 U.S.C. § 704.

Although Plaintiffs named Cissna, the Director of the of the Agency, as the Defendant when they filed the complaint, the Court takes judicial notice, pursuant to Fed. R. Evid. 201, that Tracy Renaud is currently the Acting Director of the Agency. Therefore, pursuant to Fed. R. Civ. P. 25(d), the Court will direct the Clerk's Office to substitute Tracy Renaud, Acting Director, U.S. Citizenship and Immigration Services, as the Defendant in this case.

The suit, however, is actually against the Agency. *See generally Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) ("[A] suit against a [federal] official in his or her official

capacity is not a suit against the official but rather is a suit against the official's office."). The Court has jurisdiction over this matter under 28 U.S.C. § 1331.

Pending before the Court are two motions for summary judgment: one from Plaintiffs and one from the Agency. Having considered the motions, the responses, the reply, the record, and the applicable law, it is the judgment of the Court Plaintiffs' motion for summary judgment will be denied and the Agency's motion for summary judgment will be granted.

## II.     FACTUAL AND PROCEDURAL HISTORY

### A.     *Factual History*

In March 2006, Annfyeon, a resident of Jamaica, lawfully entered the United States to work as seasonal labor for Kingston Plantation through November 30, 2006. Annfyeon failed to leave the United States after her seasonal work ended and she remained in this country. Annfyeon later met and married her first husband, S.T., in 2009. S.T. is a citizen of the United States. On October 3, 2010, S.T. filed a Form I-130, Petition for Alien Relative (I-130 Petition I), on behalf of Annfyeon, seeking to classify her as a spouse of a United States citizen.

The Agency scheduled an in-person interview for Annfyeon and S.T., during which the Agency began to suspect Annfyeon and S.T.'s marriage was a sham entered into for the purpose of obtaining a visa. Subsequently, on March 29, 2013, Officer M.B. at the Agency conducted separate interviews with Annfyeon and S.T. These separate interviews resulted in the uncovering of multiple discrepancies including: (1) S.T. stated Annfyeon had a close relationship with her father, but Annfyeon said her father lived in Connecticut and she "did not have a relationship with him"; (2) S.T. stated he and Annfyeon did not live together until after they were married, but Annfyeon stated they lived together prior to their marriage; and (3) S.T. "could not state [whether]

2

or not [Annfyeon's] mother attended the[ir] wedding", but Annfyeon stated "[S.T.'s] friend (who she could not name), her mother, and her stepfather attended the wedding." Notice of Intent to Deny [NOID] Letter at 3, CAR, ECF 25-5 at 102.

After M.B. conducted the separate interviews with Annfyeon and S.T., he wrote, in a memorandum to L.Z. at the Fraud and Detection and National Security Directorate (FDNS), "[t]here were a few discrepancies [in the separate interviews with Annfyeon and S.T.], some major and some minor." Letter from M.B. to L.Z., *Id.* at ECF 25-3 at 44. L.Z. subsequently contacted D.G. with Homeland Security Investigation (HSI), the principle investigative arm of the U.S. Department of Homeland Security, and formally requested HSI conduct an interview with S.T. to substantiate a finding of fraud on S.T.'s then pending I-130 Petition I.

On August 15, 2013, HSI Special Agents D.G. and J.W. visited S.T. at his home and interviewed him regarding his marriage to Annfyeon. According to D.G. and J.W., S.T. confessed to entering into a sham marriage with Annfyeon for the sole purpose of helping Annfyeon obtain a visa. This confession by S.T. is substantiated by the Withdrawal of Petition/Application he signed the same day, requesting to withdraw the I-130 Petition I he filed on behalf of Annfyeon.

In S.T.'s Withdrawal of Petition/Application, he wrote, "I only married [Annfyeon] to help her stay in the United States[.] We never lived together as man and wife[.] When we went to immigration[,] we lie[d] about livin[g] together[.] I'm so sorry for l[y]ing[,] this marr[i]age is not real[.]" S.T.'s Withdrawal of Petition/Application, *Id.* at ECF No. 25-2 at 23. Also, S.T.'s roommate "was present during this confession and verified that [S.T.] and [Annfyeon] had not resided together." Denial Letter at 2, *Id.* at ECF 25-5 at 90. Annfyeon and S.T. officially divorced on January 27, 2017.

Annfyeon and Johnnie began dating in 2014 and started living together in September 2014. They were married on August 22, 2017. Johnnie later filed an I-130 Petition II on behalf of Annfyeon in February 2018, seeking to classify her as his spouse. As part of the application process, Annfyeon's ex-husband, S.T., wrote a letter in support of the I-130 Petition II and stated his marriage to Annfyeon, contrary to his previous written statement to HSI, was legitimate and bona fide.

M.B., on March 26, 2019, issued Johnnie a NOID letter regarding his I-130 Petition II. The NOID letter stated the Agency's intent to deny the I-130 Petition II was based on Annfyeon and S.T.'s prior marriage being a sham, entered into solely for the purpose of evading immigration laws. The NOID letter outlined the evidence supporting its decision that included, among other things, reference to D.G. and J.W.'s August 15, 2013, interview with S.T., as well as the discrepancies in Annfyeon and S.T.'s separate interviews with M.B.

After Johnnie received the NOID letter, Plaintiffs sought to inspect the complete Agency record of the aforementioned immigration proceedings to review the alleged statements relied on by the Agency in support of its determination. The Agency denied Plaintiffs' request to view the records. In support of the Agency's decision to deny a review of the records, it noted it had provided a detailed explanation in the NOID letter as to the Agency's belief Annfyeon entered into a fraudulent marriage with S.T., as required by 8 C.F.R. § 103.2(b)(16)(i) (setting forth the procedure for when a petitioner may inspect the record of a proceeding that constitutes the basis for a determination in a NOID letter).

Plaintiffs subsequently responded to the NOID letter and included two declarations intended to rebut the Agency's allegations of marriage fraud. The first declaration was a statement from S.T. explaining "he was intoxicated during the August 2013 interrogation [with HSI]" and "the immigration officers knew he was intoxicated but interrogated him anyway." Pls.' Am.

4

Compl. ¶ 46. S.T.'s declaration also noted any statement he wrote on the day of the interview "was dictated to him by the [HSI] officers." *Id.* The second declaration was a statement from Annfyeon "recounting her experience with S.T. the day after officers interrogated S.T." *Id.* ¶ 47.

On May 3, 2019, the Agency issued a denial letter as to Johnnie's I-130 Petition II. The denial letter stated "due to the fact that you failed to respond to the NOID [letter], [the Agency] considers your application abandoned and, therefore, denies it." Denial Letter at 3, CAR, ECF 25-5 at 91. But, the denial letter also stated the Agency received the two declarations submitted in response to the NOID letter and reviewed their content. Ultimately, the denial letter concluded Johnnie "failed to overcome the grounds outlined in the [NOID letter] issued by this office on August 28, 2018." *Id.* at 89.

  **B.** ***Procedural History***

This Court, on June 24, 2019, denied Plaintiffs' second motion for injunctive relief pursuant to 5 U.S.C. § 705 that asked the Court to delay the legal effect of the Agency's denial of Johnnie's I-130 Petition II pending judicial review, as well as motions to compel completion of the record.

Plaintiffs subsequently filed a motion for summary judgment, which asks the Court to rule: the Agency's denial of the I-130 Petition II was arbitrary and capricious, the Agency violated its own regulations by refusing to allow Plaintiffs to inspect the record of proceedings before issuing a denial of the I-130 Petition II, the certified administrative record (CAR or the record) is incomplete, and the Agency violated Plaintiffs' Due Process rights.

The Agency filed its motion for summary judgment wherein it requests the Court rule: the denial of Johnnie's I-130 Petition II was not arbitrary and capricious, the Agency followed all of its regulations regarding information provided to Plaintiffs pursuant to the I-130 Petition II before

issuing its denial letter, the record is complete, and the Agency failed to violate Plaintiffs' Due Process rights. The Agency's motion also contained its response to Plaintiffs' motion.

Thereafter, Plaintiffs filed their response to the Agency's motion, as well as replied to the Agency's response. The Court, having been fully briefed on the relevant issues, will now adjudicate both motions.

### III. STANDARD OF REVIEW

The Administrative Procedure Act (APA) provides the Court may set aside an agency's findings and conclusions when they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). A final agency determination is arbitrary and capricious if:

> the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

Review under the APA "is highly deferential, with a presumption in favor of finding the agency action valid." *Ohio Valley Env't Coal v. Aracoma Coal Co.*, 556 F.3d 177, 192 (4th Cir. 2009). "Even when an agency explains its decision with 'less than ideal clarity,' a reviewing court will not upset the decision on that account 'if the agency's path may reasonably be discerned.'" *Alaska Dep't of Env't Conservation v. E.P.A.*, 540 U.S. 461, 497 (2004) (quoting *Bowman Transp., Inc. v. Arkansas–Best Freight System, Inc.*, 419 U.S. 281, 286 (1974)).

"[W]hen a party seeks review of agency action under the APA, the district judge sits as an appellate tribunal." *Am. Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1083 (D.C. Cir. 2001).

Under the APA, a decision of an agency should be upheld if "the record reveals that a rational basis exists for its decision." *Nat. Res. Def. Council, Inc. v. E.P.A.*, 16 F.3d 1395, 1401 (4th Cir. 1993) (citation omitted).

In an APA case such as this, summary judgment serves as the mechanism for deciding, as a matter of law, whether the agency action is supported by the administrative record and is otherwise consistent with the APA.

### IV.     DISCUSSION AND ANALYSIS

The resolution of the parties' motions for summary judgment turn on the following four issues that will be discussed accordingly.

#### A.     *Whether the Agency's denial of Johnnie's I-130 Petition II was arbitrary and capricious*

Plaintiffs, in their motion, present three arguments in support of their contention the Agency's denial of the I-130 Petition II was arbitrary and capricious.  As to the first, Plaintiffs contend the Agency denied the I-130 Petition II because they failed to timely respond to the NOID letter.  But, as noted by the Agency in its motion, Plaintiffs previously made this argument to the Court and it was rejected.  In the Court's previous order, it noted "While the [A]gency stated [in the denial letter] it considered [Johnnie's] petition[] abandoned, [it] also analyzed the contents of Plaintiffs' responses to the NOID [letter] and determined they were not convincing. . . . There is ample evidence in the [A]gency's final decision to demonstrate the [A]gency had a rational basis for its decision irrespective of whether Plaintiffs abandoned the[] application."  June 24, 2019, Order at 9–10 (internal quotation omitted).  Therefore, the Court's previous holding applies and it will dismiss this argument.

7

Turning to Plaintiffs' second argument, they maintain a recent Board of Immigration Appeals opinion, *Matter of Singh*, 27 I. & N. Dec. 598 (BIA 2019), issued a new precedent decision interpreting the phrase "substantial and probative" as those words relate to the standard of proof necessary to bar the approval of a visa petition based on marriage fraud. *See Matter of Singh*, 27 I. & N. Dec. at 607 (internal quotations omitted) (footnote omitted) ("Thus, we hold that to be substantial and probative, the evidence must establish that it is more than probably true that the marriage is fraudulent.").

In particular, Plaintiffs argue the Agency failed to "consider whether it was more than probably true that, at the outset of their marriage, [S.T.] married Annfyeon for the sole reason of evading immigration laws" and "the only standard of proof [the Agency] cites is a preponderance of the evidence, which *Singh* expressly disclaims as insufficient to apply the marriage fraud bar under [8 U.S.C.] § 1154(c) [(stating an I-130 Petition will be denied if the Agency determines the noncitizen spouse previously entered into a fraudulent marriage)]." Pls.' Mot. for Summ. J. at 13–14 (internal citation omitted).

The Agency, in its motion, avers it "cannot be expected to cite to or reply upon future and yet to be known case law when rendering its decision." Agency's Mot. for Summ. J. at 16. The Agency further contends, notwithstanding its inability to predict future case law when rendering its decisions, "the evidence articulated [by the Agency in its denial letter to Johnnie] nonetheless meets the standard articulated in *Matter of Singh*." *Id.*

Here, the Agency, in its NOID letter, outlined the "substantial and probative evidence" burden, as well as cited to, and quoted, the then-leading case on the matter, *Matter of Tawfik*, 20 I. & N. Dec. 166, 167 (BIA 1990). NOID Letter at 2, CAR, ECF 25-5 at 101. *Singh* failed to change the definition of substantial and probative. In fact, *Singh* specifically stated "In clarifying

8

the degree of proof required under section 204(c) [of the Immigration and Nationality Act], we note that this is consistent with the standard we currently employ in adjudicating visa petitions involving marriage fraud." *Singh*, I. & N. Dec. at 607.  Thus, Plaintiffs' argument merely contests whether the evidence of fraud cleared the "substantial and probative" bar.  The Agency discerned it did, and the Court, under the APA, is unable to "substitute its judgment for that of the [A]gency[.]" *State Farm*, 463 U.S. at 30.  Accordingly, the Court will reject this argument.

Lastly, Plaintiffs contend the Agency improperly entertained factors "not considered by [C]ongress [when it wrote the immigration laws relevant to this case]" in its decision to deny Johnnie's I-130 Petition II.  Pls.' Mot. for Summ. J. at 14.  Specifically, Plaintiffs posit 8 C.F.R. § 204.2 provides an all-inclusive list of the types of documentation that "may establish that the prior marriage was not entered into for the purpose of evading the immigration laws," 8 C.F.R. § 204.2(B)(1)–(6), and the Agency considered evidence outside of the six categories listed therein.

The Agency, in its motion, posits it "'may rely on any relevant evidence'" to support its finding Annfyeon and S.T.'s marriage was a sham. Agency's Mot. for Summ. J. at 16 (quoting *Tawfik*, 20 I&N Dec. at 168).

Here, as noted by the Agency, it may "rely on any relevant evidence" demonstrating the invalidity of a marriage.  *Tawfik*, 20 I&N Dec. at 168.  And, 8 C.F.R. § 204.2(B) specifically states the six categories of evidence listed "are not limited" to themselves.  8 C.F.R. § 204.2(B).

Under the APA, the Court need only determine whether the record reveals the Agency had a rational basis for its denial of Johnnie's I-130 Petition II.  *See Nat. Res. Def. Council, Inc.*, 16 F.3d at 1401 (holding the decision of an agency should be upheld if "the record reveals that a rational basis exists for its decision.").  And, as noted by the Court in its previous Order, the record reveals "the [A]gency had a rational basis for its denial of [Johnnie's] petition[] based upon S.T.'s

9

statement admitting his marriage to Annfyeon had been entered into for the sole purpose of helping Annfyeon obtain a [visa] and S.T.'s roommate's statement confirming S.T. and Annfyeon never resided together as they had claimed." June 24, 2019, Order at 9. Consequently, the Court will disregard this argument.

For all these reasons, the Court will grant summary judgment to the Agency, and deny it to Plaintiffs, on the issue of whether the Agency's denial of Johnnie's I-130 Petition II was arbitrary and capricious. As discussed by the Court in its June 24, 2019, Order—and restated here—the Agency had a rational basis for its denial of Johnnie's I-130 Petition II.

> **B.     *Whether the Agency violated its own regulations by refusing to allow Plaintiffs to inspect the record of the immigration proceedings before issuing a denial letter***

Plaintiffs contend the Agency violated its own regulations by refusing Plaintiffs' request to inspect the record of the immigration proceedings before issuing a denial of the I-130 Petition II. Although the Court previously rejected Plaintiffs' identical argument in its June 24, 2019, Order, Plaintiffs contend a recent United States Supreme Court decision, *Kisor v. Wilkie*, 139 S.Ct. 2400 (2019), requires the Court to review, de novo, the Agency's interpretation of the regulation governing a petitioner's right to inspect evidence related to the adjudication of a Petition for Alien Relative: 8 C.F.R. § 103.2(b)(16).

The Agency, in its motion, posits "*Kisor* pertains to ambiguous regulations" and "Plaintiffs' disagreement with the manner in which the Agency and numerous Courts . . . have interpreted 8 C.F.R. § 103.2(b)(16) . . . [fails to] make the regulation ambiguous." Agency's Mot. for Summ. J. at 9.

Here, Plaintiffs' contention 8 C.F.R. § 103.2(b)(16) is so ambiguous as to require the Court to undertake a de novo review is without merit. The Court, in its previous order, interpreted 8 C.F.R. § 103.2(b)(16) without issue and failed to find any ambiguity therein. For example, the

Court noted "Given the level of detail provided in the NOID [letter], the Court concludes the summary complied with [8 C.F.R.] § 103.2(b)(16) and the [A]gency's action was lawful." June 24, 2019, Order at 12.

Accordingly, and notwithstanding the Supreme Court's *Kisor* decision, the Court's previous holdings apply here. For these reasons, the Court will grant summary judgment to the Agency, and deny it to Plaintiffs, on the issue of whether the Agency complied with its regulations governing a petitioner's right to inspect evidence related to the adjudication of an I-130, Petition for Alien Relative.

### C.     *Whether the record is incomplete*

Plaintiffs aver "the record is demonstrably incomplete" and "this Court lacks a sufficient basis to make a decision on the merits and the [Agency's] denial must be set aside." Pls.' Mot. for Summ. J. at 24. As noted by the Agency in its motion, Plaintiffs previously made this argument to the Court and it was rejected. The Court, in its previous Order, determined "Plaintiffs . . . failed to provide any concrete evidence that the CAR provided by the [A]gency in this case is incomplete or frustrates judicial review. . . . Every document produced by the [A]gency in the CAR and the supplement [to the CAR] lead[s] to one inescapable conclusion—Annfyeon and S.T. married for the sole purpose of circumventing the immigration laws of the United States." June 24, 2019, Order at 14–15. Consequently, the previous holding of the Court applies to this issue.

Thus, the Court will grant summary judgment to the Agency, and deny it to Plaintiffs, on the issue of whether the Agency provided a complete record for judicial review.

### D.     *Whether the Agency violated Plaintiffs' Due Process rights*

Plaintiffs present two arguments in support of their contention the Agency violated their Due Process rights. As to the first, they maintain the Agency's failure "to provide copies of

derogatory evidence" used to support the NOID letter violated their Due Process rights. Pls.' Mot. for Summ. J. at 24. In support of this argument, they cite to a recent Ninth Circuit Court of Appeals case, *Zerezghi v. USCIS*, 955 F.3d 802 (9th Cir. 2020).

In *Zerezghi*, a United States citizen, Ghilamichael Zerezghi (Zerezghi), married Huruia Meskel (Meskel), a citizen of Eritrea. 955 F.3d. at 804. Zerezghi subsequently filed an I-130 Petition on behalf of Meskel, but the Agency denied the application because it determined Meskel's previous marriage to her ex-husband, Tesfai Ghidei (Ghidei), was a sham. *Id.* The Agency's NOID letter to Zerezghi referenced "records indicat[ing] that [Ghidei] was living with his sister at another location during the relevant time period" as proof of Meskels' prior marriage being a sham, and in support of its decision to deny Zerezghi's I-130 Petition. *Id.* at 809 (quoting the Agency's NOID letter to Zerezghi). But, the Agency, in the NOID letter to Zerezghi, failed to provide the source or content of these records. *Id.* Thus, Zerezghi was unable to adequately respond and counter the NOID letter. *Id.* The Court in *Zerezghi* held the Agency's "use of undisclosed records [in the NOID letter] . . . in making a determination of marriage fraud was unconstitutional" because Zerezghi was unable to adequately respond and rebut the arguments supporting the decision of the Agency. *Id.* at 809–10.

The Agency argues in its motion, among other things, *Zerezghi* is an outlier and contrary to numerous other Ninth Circuit cases that held summaries of evidence in NOID letters are acceptable.

Here, notwithstanding the fact the Court disagrees with the Agency's contention *Zerezghi* is an outlier among other Ninth Circuit cases, the Court recognizes the facts of *Zerezghi* notably distinct from the facts of this case. The NOID letter, in the instant matter, provided sufficient detail to Johnnie as to the source and content of the records supporting the Agency's reasons for

its intended decision, provided Plaintiffs an adequate opportunity to respond, and, as noted above, considered their response prior to issuing its decision to deny the I-130 Petition II. Inasmuch as Plaintiffs in this case were afforded sufficient information in the NOID letter, as well as an opportunity to rebut its findings, the Court concludes Plaintiffs' argument the Agency violated their Due Process rights is without merit.

Turning to Plaintiffs' second argument, they aver *Zerezghi* demonstrates the Agency violated their Due Process rights by failing to apply the proper standard of proof under *Singh*.

In *Zerezghi*, the Agency argued it may "deny any immigration application as long as there was evidence of marriage fraud, even if it was more likely than not that the marriage was bona fide." *Id.* at 814. And, as to the substantial and probative evidence standard, the Agency maintained it "requires much less than a preponderance of the evidence." *Id.* at 813. As expected, the Court in *Zerezghi* rejected such an argument.

In the instant case, the Agency posits, notwithstanding the fact Ninth Circuit precedent is nonbinding on this Court, "the evidence in this case satisfies *Singh* since S.T.'s statement and withdrawal of his petition clearly indicates that the marriage was invalid at its inception." Agency's Mot. for Summ. J. at 21.

Here, again, the differences between the facts of *Zerezghi* and this case are notably distinct. As noted above, the Agency, in its NOID letter to Johnnie, outlined the "substantial and probative evidence" burden, as well as cited to, and quoted, the then-leading case on the matter, *Tawfik*, 20 I. & N. Dec. at 167. NOID Letter at 2, CAR, ECF 25-5 at 101. Also, the Agency, in this case, has made no argument the substantial and probative evidence burden requires less than a preponderance of the evidence.

Furthermore, the Court addressed in its previous Order—and has restated in this Order—the record reveals "the [A]gency had a rational basis for its denial of [Johnnie's] petition[] based upon [S.T.'s] statement admitting his marriage to Annfyeon had been entered into for the sole purpose of helping Annfyeon obtain a [visa] and S.T.'s roommate's statement confirming S.T. and Annfyeon never resided together as they had claimed."  June 24, 2019, Order at 9.  Because a rational basis supported the Agency's decision to deny Johnnie's I-130 Petition II, the Court will reject this Due Process argument.

For these reasons, the Court will grant summary judgment to the Agency, and deny it to Plaintiffs, on the issue of whether the Agency violated Plaintiffs' Due Process rights.

## V.     CONCLUSION

For the reasons stated above, it is the judgment of the Court Plaintiffs' motion for summary judgment is **DENIED** and the Agency's motion for summary judgment is **GRANTED**.  And, the Court directs the Clerk's Office to substitute Tracy Renaud, Acting Director, U.S. Citizenship and Immigration Services, as the Defendant in this case.

 **IT IS SO ORDERED.**

Signed this 29th day of March 2021, in Columbia, South Carolina.

s/ Mary Geiger Lewis  
MARY GEIGER LEWIS  
UNITED STATES DISTRICT JUDGE
